Doonan *vs.* Ives & Krouse.

## DOONAN *vs.* IVES & KROUSE.

1. Real estate brokers having brought suit for commissions against the seller of a lot, claiming to have procured the purchaser, although the trade was consummated by the lot owner herself, it was admissible to prove by the purchaser that the brokers had no influence on him in the sale made to him.

(*a.*) Brokers in whose hands property is placed for sale, in order to earn commissions on account of the sale of such property, must either have sold it or been the procuring cause of the sale. If the purchaser who was spoken to by them had abandoned all idea of the trade, and they had no influence at all in bringing it about, they would not be entitled to commissions, although the purchaser may subsequently have bought from the owner.

2. It was admissible to show by the son and agent of the owner of the lot that he had seen the person who ultimately purchased, before the brokers communicated with him about the property, and had told him it was for sale, and the latter had said that he would like to buy it, to hold it awhile. This bore upon the question whether or not the brokers procured the purchaser as a probable buyer.

3. If real estate brokers set to work to sell property, and procured a customer, or one likely to buy from them, and pending their negotiations with him, the owner interfered, with a view to save commissions, knowing or having information that they were negotiating with him, and sold the property to the customer so procured by the brokers, even with some modifications of the terms on which she had authorized them to sell, then she could not defeat their commission; but if the negotiations were at an end between the purchaser and the brokers, and the owner sold to him without their aid, then they could not recover; or if the owner knew that the purchaser wished to buy, without their procurement of him as a purchaser, deriving her knowledge from nothing they had done in her employment, and sold on her own account to the person as an original customer or buyer, then they could not recover.

(*a.*) Because one puts property in the hands of brokers to sell, it does not follow from this alone that he cannot himself sell.

February 7, 1885.

Principal and Agent. Real Estate Agents. Commissions. Contracts. Vendor and Purchaser. Before Judge HAMMOND. Fulton Superior Court. March Term, 1884.

Ives & Krouse, real estate agents, brought suit to the fall term, 1883, of Fulton superior court, on an account against Mrs. Ellen Doonan for $250 for commissions on sale of a certain lot of defendant's, on Whitehall street, in the city of Atlanta, to John Keely for $8,000, charging 5 per cent on the first $2,000 and 2½ per cent on the remainder.

The defendant pleaded the general issue.

On the trial, the plaintiffs introduced the following evidence :

*H. Krouse:* Account is correct, and has not been paid; services were rendered. Commission charged is customary rate, except by special contract. Some time in March or April, last year, I met Mr. Doonan (son of defendant) on the street, and he told me they wanted to sell a piece of property on Whitehall street, that he had given it to Mr. Ives, my former partner, and he already had it on our books; he gave me $8,000 as his price, and terms one-half cash, balance in one and two years, is my recollection. A few days afterwards, I called on Mr. Keely, who had spoken to me about wanting to buy real estate. I spoke to him about this property and gave him terms. He said he was very busy and to call again. A day or two after that, I met Mr. Doonan and told him that I had seen Capt. Keely, that I did not know whether he would buy it or not, and that he could help me out by seeing Capt. Keely. I called again on Keely, who asked : " Do you think it is a bargain ?" I said, " Yes." He said he was not feeling well, and to come again. In the meantime, I wrote to other parties. Did not know the property was sold until two or

three weeks after the sale, and continued to show it to other parties. Mr. Doonan informed me it had been sold. My agency existed at time of sale; it was never revoked.

*Cross-examined:* I met Mr. Doonan on the street; he told me he wanted me to sell that lot; the terms he gave me were one-half cash, balance in six and twelve months, or one and two years, I am not positive which; possibly it was six and twelve months, as those are the usual terms. I saw Mr. Keely; he did not agree to take the property; he told me to call again. I gave him half cash, balance in six and twelve months as the terms, though I think I told him that I thought better terms could be made. Mr. Doonan never authorized me to offer any better terms. I called twice to see Keely at his store, and stayed, I suppose, about fifteen minutes; it was a week or ten days between times. I told Doonan I had seen Keely once, and did not know whether he would buy or not. That is all the conversation I had with him until after the sale. Never saw Mrs. Doonan at all. Keely did not say whether he would buy or not. I had talked with him, and thought the prospects very gloomy. There was no agreement with me as to commissions to be charged. Doonan had previously spoken to Mr. Ives about the property.

Plaintiffs introduced bond for title, dated May 16, 1883, from Mrs. Ellen Doonan to John Keely for the sale of the property in question at $8,000.00, payable as follows: $2,000.00 cash, $2,000.00 on 16th May next, $2,000.00 on 16th May, 1885, and $2,000.00 on 16th May, 1886, with interest at 7 per cent per annum.

Defendant introduced the following evidence:

*John Keely:* I bought the property in controversy. About a year ago, Mr. Krouse called upon me once or twice, and stated that he had this property for sale. I declined to purchase it upon the terms which he offered. Some time thereafter, Mrs. Doonan was in my store making some purchases. I am not aware that she called for the purpose of making a proposition of sale to me She remarked

that she was much disturbed about the sale of her lot. She said she wanted $2000.00, and if I would pay her $2,000.00 cash, I might make my own terms as to the balance. I purchased the lot because of the opportunity to get it on such easy terms. The terms offered me by Mr. Krouse were one-half cash, balance in six and twelve months. I declined to take the property on those terms.

At the time I purchased from Mrs. Doonan, I was not negotiating with Krouse. The matter had been dismissed from my mind. At the time I traded with Mrs. Doonan, she stated that Mr. David Mayer was about to purchase the lot. I was acquainted with Mrs. Doonan and her son before I bought this property; have known them intimately for about twenty-four years. I knew the property before Mr. Krouse spoke to me about it; knew it generally as a body, well, but cannot give its dimensions.

*Cross-examined:* Am not positive whether or not I knew the property was for sale before Mr. Krouse mentioned the fact to me; that is my best recollection. The details of the conversation are not very fresh in my mind at this time. I refused his terms. Am not sure that he called a second time. I had dismissed the matter from my mind after his visit the first or second, if he made a second visit. If I told Krouse to call again, it was merely a polite way of disposing of him.

*Jno. J. Doonan :* Am the defendant's son. In the spring of 1883, I called at the office of Ives & Krouse and spoke of the property. I met Mr. Krouse on the street. He asked if the property was for sale. I said yes. He asked the price, and I said $8,000. I asked what commission he would charge, and he said $2\frac{1}{2}$ per cent, or $200. He asked the terms, and I said "cash." He said it was very hard to get a purchaser for cash, and that the usual terms were one-half cash, balance in six and twelve months. I replied that a sale on those terms would be satisfactory. A few days afterwards, I met Mr. Krouse. He said, "I have been talking to John

Keely about that place, but I don't think there is any 'gum' in him." The matter just dropped there, and I took no more notice of it, nor took any other action. About two weeks after that, we received an offer for the property from Mr. R. H. Knapp. Mr. Mayer also wanted to purchase, and asked to see my mother. In the negotiations with Krouse, I was acting as my mother's agent, but she did not know that Krouse was employed or any particular person was employed. She knew I was trying to sell the property, and I told her I had placed it in the hands of several real estate agents.

The jury found for the plaintiffs $200.00. Defendant moved for a new trial, on the following grounds:

(1) to (3.) Because the verdict was contrary to law and evidence.

(4.) Because the court charged the jury as follows: " If you find that defendant employed plaintiffs to make a sale of her property, and that they procured a customer for the property, and pending the negotiation between them and that customer, Mrs. Doonan took the matter out of their hands and made a sale to that customer, upon the same terms, or substantially the same, or different terms, she could not by that conduct deprive them of their right to recover commissions."

(5.) Because the court charged the jury thus: " An agent who is employed to perform certain business for his principal, if he discharges his duty, is entitled to commissions—that is the rule of law. If he is limited to certain terms, and he fails to make a sale on those terms and breaks off negotiations with the party, then the owner can make a sale of the property to that or any other purchaser, but the owner cannot defeat the right of the agent to his commissions by selling the property to the purchaser pending the negotiations between the agent and the customer."

(6.) Because the court charged the jury: " If you find from the evidence that Mrs. Doonan did make a sale of this property to Mr. Keely at the time negotiations were

pending between Mr. Keely and Ives & Krouse with reference to the sale of the property, and they were still making efforts to sell to him, then they can recover for their commissions."

(7.) Because the court refused to charge the jury, as requested in writing by defendant's counsel, as follows: "If the jury believe from the evidence that Keely had not agreed to take the property on the terms that Ives & Krouse were authorized to sell, before Mrs. Doonan sold it to Keely, and if you believe further that the sale by Mrs. Doonan to Keely differed in a material point from the sale authorized to be made by Ives & Krouse, plaintiffs cannot recover."

(8.) Because the court refused to allow the witness, John Keely, when on the stand as a witness for defendant, to answer the following question, propounded by counsel for defendant, to-wit: "Did Mr. Krouse have any influence in inducing you to purchase this property?"

(9.) Because the court refused to allow said Keely, as a witness, to answer the following question, propounded by defendant's counsel, to-wit: "Did Krouse tell you anything about that property that you did not know before?"

(10.) Because the court refused to allow said Keely to answer the following question asked by defendant: "Now, Mr. Keely, from what Mr. Krouse represented to you, had your mind come to any conclusion about buying or not buying that property?" [Defendant's counsel stated that he proposed to prove that the conduct of Krouse had no effect upon the mind of Keely.]

(11.) Because the court ruled out the following testimony of defendant's witness, John J. Doonan, to-wit: "Some time in the summer of 1882, my mother, the defendant, determined to sell this place, and she told me to make efforts to sell it, and one afternoon during August, I was going along Whitehall street, and I met Mr. Keely, who was closing his store, and walked to the corner of Peters street at Trinity church, and I remarked that my

mother had put her property on sale. He said he wished he had the money to buy it, as he thought it would some time become valuable for store property, and to hold on to it awhile."

The court overruled the motion, and the defendant excepted.

BROYLES & JOHNSTON, for plaintiff in error.

L. J. WINN; JACK J. SPALDING, for defendant.

JACKSON, Chief Justice.

The defendants in error sued the plaintiff in error for commissions as brokers, and recovered. A motion for a new trial was overruled, and plaintiff in error excepted.

1. We think that the plaintiff in error should have been permitted to prove by Keely that the brokers had no influence on him in the sale made by herself to him, and that the testimony in the eighth, ninth and tenth grounds of the motion sought to be drawn out by the questions asked, should have been admitted, and the answers to those questions should have gone to the jury.

The case, to say the least, is quite close whether the plaintiffs below can recover on the facts, and any material error should operate to make a new trial necessary to the ends of justice. The brokers must have done something to earn their commissions. They must either have sold the property or have been the procuring cause of the sale. If Keely, though spoken to by them, had abandoned all idea of the trade, and they had no influence at all in bringing it about, we do not see how they were the procuring cause of the sale, and entitled to commissions. 83 N. Y., 378; 20 Howard, U. S., 221.

2. We think that the testimony of the son and agent of the plaintiff in error, to the effect that he had seen Keely before the brokers communicated with him about the property, and told him it was for sale. and he had said he

would like to buy it, to hold it awhile, was admissible as bearing on the point whether or not the brokers procured Keely as a probable buyer, inasmuch as the party desiring to sell knew that he might buy before they procured him, and as bearing on the point whether the plaintiff in error took advantage of what the brokers had done in turning Keely's mind on the property, and in fraudulently interfering pending negotiations of the brokers, so as to save commissions. The son was the agent who employed these brokers in behalf of his mother.

3. We hold that the true law of the case is this : If, under their contract with Mrs. Doonan, the brokers set to work to sell this property, and had procured Keely as a customer, or one likely to buy from them, and pending their negotiations with him, Mrs. Doonan interfered with a view to save commissions, knowing or having information that they were negotiating with him, and sold the property to the customer so procured by the brokers, even with some modification of the terms on which she had authorized them to sell, then she could not defeat their commissions, because it would be the fraudulent taking advantage of their labor without paying for it; but if the negotiations were at an end between Keely and the brokers, and she sold to him without their aid, then they could not recover; or if she knew that Keely wished to purchase without their procurement of him as a purchaser, deriving her knowledge from nothing they had done in her employment, and sold on her own hook to Keely, as an original customer or buyer, then they could not recover.

Because one puts property in the hands of brokers to sell, it does not follow that he himself cannot sell. If he does not use their labor to help him, he owes them nothing; if he does use it, and puts in to take the trade—its consummation—out of their hands so as to escape paying them, then *ex equo et bono*, he does owe them, and must pay just what they could have made by the contract if he had not prevented it. This is sound sense and good law,

and whatever there may be conflicting with it in the charges excepted to, if anything, is, in our judgment, erroneous.

The cream and reason and spirit of the authorities cited on both sides do not collide with what is said above; if .any of them do collide, we adopt the adverse line. Indeed, *Hyams vs. Miller, trustee*, 71 *Ga.*, 608, rules the principle above stated.

Judgment reversed.

Cited for plaintiff in error, 18 Am. Law R., p. 926, an Iowa case; 53 Wisconsin, 41; 29 Minn., 126; 83 N. Y., 378; 55 *Id.*, 322; 61 *Id*, 415; 51 *Id.*, 124; 49 *Id.*, 561; 63 *Id.*, 448; 41 How. Pr., 145; 20 How. U. S., 221; 22 How., 72; 54 Penn. St., 394; Wharton on Ag'cy, §§325, 326, 327.

For defendants, Cent. Law Jour., April 18, 1884., p. 317, a Md. case; Story on Sales, 86; 54 Pa., 394; 9 Ves., 234; 20 How. U. S., 221; 22 *Id.*, 69; 54 Pa. St., 394; 32 Minn., 664; 36 Conn., 136; 79 Ill., 435; 46 Mo., 555; 59 Ind., 275; 9 Mo., 216; 46 *Ga.*, 80.