### 5765.  FLOYD & LEE *et al. v.* BOYD, administratrix.

1. Assignments of error not referred to in the brief of counsel for the plaintiffs in error must be treated as having been abandoned.

2. The dismissal of an action against a partnership is no bar to an action against a partnership of the same name, not comprising the same individuals. In contemplation of law, a partnership, regardless of the firm name, is an entity prima facie distinct from any other partnership or person; and this rule is not affected by the fact that some of the individuals composing the partnership may be members of another firm, engaged in the same or a similar business. The trial judge therefore did not err in sustaining a general demurrer to the plea of res judicata, filed in behalf of the partnership styled "Floyd & Lee," and alleged to be composed of J. R. Floyd and D. C. Lee, the plea being based upon a judgment dismissing a prior suit against Floyd & Lee, a partnership alleged to be composed of J. R. Floyd and B. C. Lee.

3. A judgment can not be the basis of a plea of res judicata in an action in which the parties are not the same as in the case in which the judgment was rendered, although the cause of action be the same in both cases.

4. It is immaterial that the action was brought in six months from the plaintiff's dismissal of a prior suit against a partnership of the same style but not composed of the same persons. A plaintiff's dismissal of an action will not prevent him from proceeding upon the same cause of action in a suit against a different defendant; and in such a case the second petition is not a "renewal" of the action, within the provisions of section 4381 of the Civil Code, as to renewal of dismissed or non-suited actions within six months.

5. "The fact that property is placed in the hands of a broker to sell does not prevent the owner from selling, unless otherwise agreed. The broker's commissions are earned when, during the agency, he finds a purchaser ready, able and willing to buy, and who actually offers to buy on the terms stipulated by the owner." Civil Code, § 3587.

6. The evidence did not authorize a verdict for so large an amount as

that awarded the plaintiff by the jury, but there is evidence in the record which authorized a verdict for the plaintiff; and therefore this court will exercise its discretionary power of terminating litigation, by directing that the verdict be reduced to an amount definitely fixed by the evidence.

DECIDED FEBRUARY 18, 1915.

Complaint; from city court of Thomasville—Judge W. H. Hammond.   May 4, 1914.

*Theodore Titus,* for plaintiffs in error.   *Fondren Mitchell,* contra.

RUSSELL, C. J.   This suit was brought by Boyd against Floyd & Lee, alleged to be a partnership composed of J. R. Floyd and D..C. Lee.   The suit is to recover commissions alleged to have been earned by Boyd as a real-estate dealer, by his services as an agent in producing a purchaser for a certain tract of land and certain timber rights.   The jury returned a verdict for the plaintiff, and exceptions were taken to the judgment overruling the defendants' motion for a new trial.   The death of Boyd, the defendant in error, having been suggested of record, his temporary administratrix was in this court substituted in his stead as defendant in error.

1. The general grounds of the motion for a new trial were amended by adding two assignments of error.   The first relates to an alleged error of the court in refusing a request for certain instructions to the jury, and the second assigns error upon an instruction given.   While the points raised in these assignments of error are raised in the discussion of the evidence, there is no specific reference to either of them in the brief of the learned counsel for plaintiffs in error, and, under a well-settled rule, they must be treated as having been abandoned.

2. We shall deal first with the exceptions pendente lite, which are presented in the bill of exceptions.   It appears from the record that the petition in this case was filed November 22, 1913, and that the December term, 1913, was the appearance term.   At that term, as appears from the bill of exceptions, the defendants, Floyd & Lee, as copartners, and J. R. Floyd in his individual capacity, before pleading to the merits or demurring, filed a special plea in bar, in which it was alleged that the pending suit involved the identical cause of action set forth in a former suit between the same parties, which was dismissed by the court, and that the judgment dismissing that action was an adjudication against the plaintiff's right to recover a commission on account of the sale of the land.   The plea

further set forth that the judgment dismissing the former suit was entered on April 3, 1913, and the pending suit, not having been filed within six months, was barred. The plea in bar was overruled, the court holding that as the firm of Floyd & Lee in the former action was alleged to be constituted of J. R. Floyd and B. C. Lee, and in the present action the defendant firm was alleged to be composed of J. R. Floyd and D. C. Lee, the suits were not against the same parties. The only evidence offered in support of the plea in bar was the plea of no partnership, filed by Floyd in the former action, together with the record of the judgment in that case. There was no evidence that the names B. C. Lee and D. C. Lee were used as to the same person, nor anything to indicate more than what might be inferred from Floyd's plea of no partnership in the first case, to wit, that B. C. Lee perhaps had no actual existence. In the first suit B. C. Lee was not served, and D. C. Lee was not served in the second case. But in the second suit Floyd interposed no plea denying his partnership with D. C. Lee. To sustain the plea of res judicata it was necessary for the defendants to show, not only that the same cause of action was involved in both cases, but that the parties in both cases were the same. Civil Code, §§ 4335, 4336. If the defendants had shown that B. C. Lee was but another name by which D. C. Lee was known, or vice versa, the plea of res judicata might have been sustained; but since the court had nothing before it except the record of the previous suit, it could not have correctly held that a partnership composed of J. R. Floyd and B. C. Lee was the same legal entity as a partnership composed of J. R. Floyd and D. C. Lee, although the name and style of each firm was Floyd & Lee. To have so held would be to declare that any firm known as Smith & Jones would be liable for all the undertakings of any other firm of Smith & Jones which might thereafter form a partnership. The burden of establishing the res judicata was upon the defendants, and they failed to establish that the defendant partnership in both cases was the same. So far as is disclosed by the record, it affirmatively appeared in this case that the two partnerships were composed of different individuals; and the fact that Floyd may have been a member of both partnerships was immaterial, for it is possible for one person to be at once a member in as many partnerships as he has the means to join.

3. It is of course well settled that the plea of res judicata extends not only to what was actually pleaded in the cause, but to what could have been pleaded; and if as a matter of fact it could have been shown that the names B. C. Lee and D. C. Lee were names of one and the same person, and that there was not and never had been but one partnership in which the defendant Floyd was associated with this Lee, known both as B. C. and D. C., the dismissal of the prior suit upon a general demurrer would have been fatal to any renewal of the action. However, that is not this case.

4. Much of the argument of counsel is directed to the inquiry whether the second suit was filed within six months after the dismissal of the first action. So far as the voluntary dismissal of the plaintiff's prior suit for commissions upon the sale of the timber is concerned, the suit was filed within six months, and would have been in time even if it had been a renewal of the same action, for the plaintiff voluntarily dismissed the prior action on June 13, 1913, and the suit now before us was filed November 22, 1913. Thus only five months and nine days had elapsed. However, we are of the opinion that the provisions of section 4381 of the Civil Code have no application whatever in this case; for the reason, already pointed out, that the parties involved in the two suits are not the same. Section 4381 relates solely to renewed cases. It refers to the same action brought over; and for an action to be the same, so that the term "renewal" will apply, it is not alone necessary that the cause of action be the same, but there must also be an exact identity of the *parties*. However, the provisions of section 4381 are not applicable even as to renewed cases, unless, due to the dismissal, the bar of the statute of limitations has attached or may attach; and it is to relieve this bar that the allowance of six months time in which to renew the suit is given. *Hackney* v. *Asbury,* 124 *Ga.* 678 (52 S. E. 886).

5. The strongest contention of the plaintiffs in error is based upon evidence that Boyd did not procure a purchaser ready, willing, and able to purchase Floyd & Lee's property, and who actually offered to buy it on the terms stipulated by them. Floyd testified that he merely told Boyd that Floyd & Lee would pay him 5 per cent. commission upon a sale of the land at $35 per acre and the sawmill timber, amounting to 328 acres, at $15 per acre; that

Boyd did not have the exclusive agency or the exclusive right to sell; that there was no agreement as to the terms of the sale, and that he (Floyd) himself sold the land and the timber. Boyd testified, as Floyd had done, that there was no special agreement as to the terms of the sale under his agency. He testified that his authority was limited, so far as the price was concerned, to $35 per acre for the land, and $15 per acre for the right to cut timber, upon which he was to receive 5 per cent. commission. The land and the timber might be sold separately or together, the commission in either case being the same agreed per cent. Floyd testified that he agreed to give the commission of 5 per cent. on the sale of the land at $35 per acre, but he positively asserted that he expressly refused to pay a commission on the sale of the timber. This raised a square conflict between Boyd and Floyd as to the allowance of the commission on the sale of the timber, though they were agreed as to the agency for the sale of the land. It is uncontradicted in the record that Boyd did not himself consummate the trade, but that after the purchaser, Ansley, had been approached by Boyd in regard to the purchase of the land and the timber, he (Ansley) took the matter up with Floyd, with the result that he purchased the timber at the stipulated price of $15 per acre, but obtained the land at $30 per acre instead of at $35, to which sum Boyd's agency was confined. Ansley testified, that Boyd called his attention to the land and the timber, carried him to see the property, and proposed to sell it to him at $35 per acre for the land and $15 per acre for the timber, and that he at once agreed to buy the body of timber at $15 per acre, but declined to pay $35 per acre for the land or to consider that proposition. It thus appears that Boyd did not procure a purchaser for Floyd & Lee's land, but, under the testimony of Ansley, he did secure a purchaser for the timber upon the 328 acres of woodland. It was within the right and power of the jury to prefer the testimony of Ansley to that of Boyd on the one hand, or to that of Floyd on the other; and so the only question is whether a verdict for the plaintiff is authorized by the evidence in the record. It is of course well settled that where there is no express provision to the contrary, the appointment of a real-estate agent to sell property does not deprive the owner of the right of selling the property himself without liability to account to the real-estate agent for the commission. Civil Code, § 3587; *Doonan*

v. *Ives,* 73 *Ga.* 295; *Humphries* v. *Smith,* 5 *Ga. App.* 340 (63 S. E. 248); *Moore* v. *May,* 10 *Ga. App.* 198 (73 S. E. 29). A real-estate agent may earn commissions even when a sale is not actually con- summated, but he must procure a purchaser who is ready, willing and able to buy upon the terms proposed by the seller, or else he is not entitled to a commission. If there be evidence of bad faith on the part of the seller, shown by his withdrawing the property from the hands of the real-estate agent and selling it at a lower price, merely to avoid the payment of commissions, the real-estate dealer may recover his commissions. But where there is no evidence of fraud, or of an intention arbitrarily to deprive the agent of his commission, the mere fact that the owner of the property himself exercises his right to sell it is not evidence of fraud. We conclude that the evidence of Ansley would have authorized a verdict for the plaintiff; and since the jury found for the plaintiff, the evidence must be given the construction most favorable to him; and in this view of the case, Ansley's testimony that he was willing, and ex- pressed his willingness, to buy the timber land showed that the plain- tiff contributed to its sale, and that he was entitled to a commission on the sale of the timber, even though the plaintiff was not entitled to recover upon the sale of the land because he did not procure a purchaser for it at $35 per acre, which was the only price at which he was permitted to sell. No objection can be made to the plaintiff himself selling the property; for, unless an exception is stated, the general rule permits the principal to dispose of his own property, provided only that if the sale be made to one secured as a pur- chaser by the agent, the owner and principal will be liable for the commissions.

6. The jury were authorized to find a verdict in favor of the defendant, but they found for the plaintiff. In the state of the record a verdict would have been authorized for the commissions upon the sale of the timber, while it is not authorized upon the sale of the land. Hence the verdict is larger than is authorized by the evidence; and for that reason we direct that the verdict be reduced from $373.50 to $246.00.

*Judgment affirmed, with direction. Broyles, J., not presiding.*