27583. THOMPSON *v.* WEEKS.

DECIDED SEPTEMBER 9, 1939.

*W. F. Manley,* for plaintiff. *C. S. Baldwin Jr.,* for defendant.

Sutton, J. A. S. Thompson brought suit against Preston B. Weeks to recover $300 as commission due him on the sale by him, as broker for Weeks, of the lease and furnishings of a hotel at Eatonton, Georgia. The jury returned a verdict in favor of the defendant, and the exception is to the judgment overruling the plaintiff's motion for new trial.

Under the record the verdict was supported by sufficient evidence. The jury was authorized to find in substance as follows: Thompson, having a prospect, Miss Bessie Murphy, interested in the purchase of a hotel lease and furnishings, entered into negotiations with Weeks, who had a lease on a hotel at Eatonton. Without giving him the exclusive right to sell, Weeks agreed that if Thompson should be able to obtain an offer of $2000 cash it would be accepted. No trade was effected on this basis. On June 21, 1937, Thompson introduced Miss Murphy to Weeks, and the hotel was inspected. She offered to pay $1500 cash, but Weeks would not accept less than $2000 cash. In August, 1937, she purchased a hotel lease in Commerce, Georgia, and wrote to Weeks that "the deal was off." She disposed of this lease, and in November, 1937, negotiations with Weeks were resumed through Thompson; but Weeks, having installed a new range and put in a car-load of coal and some wood, would not sell for less than $3000 cash. Miss Murphy offered, through Thompson, $1500 cash, the balance to be paid in installments, but Weeks would not accept the counter-terms. Thompson endeavored to interest Miss Murphy in other hotels, and no further offers were made to Weeks. It appeared that he had become weary of showing her around without effecting a sale, and so expressed himself; and Miss Murphy, for reasons testified to by her, had become dissatisfied with Thompson, and was through with him. In January, 1938, she got in touch with another broker, one Carrington, and while they were on a tour of inspecting hotels they stopped by Eatonton, and with Weeks she entered into a purchase of the hotel lease and furnishings for a consideration of $3000, making a cash payment of $2500 and giving notes for the balance. Weeks, in the meantime, had not interfered with Thompson and Miss Murphy, pending their negotiations or at any time, and had not sought out Carrington to sell to Miss Murphy.

The general rule as to the liability of an owner to a broker for

commissions on the sale of property is stated in the Code, § 4-213, as follows: "The fact that property is placed in the hands of a broker to sell shall not prevent the owner from selling, unless otherwise agreed. The broker's commissions are earned when, during the agency, he finds a purchaser ready, able, and willing to buy, and who actually offers to buy on the terms stipulated by the owner." This principle has been reiterated in many decisions of this court and the Supreme Court, among which are *Phinizy* v. *Bush,* 129 *Ga.* 479 (59 S. E. 259) ; *Payne* v. *Ponder,* 139 *Ga.* 283 (77 S. E. 32) ; *Gresham* v. *Lee,* 152 *Ga.* 829, 832 (111 S. E. 404) ; *Floyd* v. *Lee,* 16 *Ga. App.* 43 (5) (84 S. E. 494) ; *Montgomery* v. *Lester,* 25 *Ga. App.* 660, 662 (104 S. E. 28). It is apparent from the evidence that in June, 1937, Thompson introduced to Weeks a prospective purchaser; but while there were offers and counter-offers, this prospect, although ready and able to buy, *never actually agreed to buy on the terms stipulated by the owner.* After some negotiations with Weeks she subsequently purchased a hotel lease in Commerce, Georgia, and wrote to him that the deal was off. In November, 1937, after disposing of this acquired lease, she resumed, through Thompson, negotiations with Weeks; but as he wanted $3000 cash and she was not willing to pay more than $1500 cash, no agreement was entered into. She and Thompson, as the jury was authorized to find, became dissatisfied with each other, and their relations ended. He had no exclusive right to sell; and Weeks, who had in no wise sought to interfere with Thompson in his efforts to consummate a sale to Miss Murphy, and who was willing to sell on the terms he had named, finally, after the prospect withdrew from Thompson, permitted another broker to effect a sale to Miss Murphy upon terms of $2500 cash and certain deferred payments.

"Where one broker, with the knowledge of the owner, has interested a customer in the purchase, and, while negotiations with the broker are still pending, the owner proceeds to close the sale with the same customer through another broker, who first presents the customer as ready, able, and willing to buy, and actually offering to buy, at the price and on the terms stipulated by the owner; and where the owner, pending such negotiations, has committed no act of bad faith amounting to a failure to remain neutral between the brokers, or to an interference in favor of the broker actually closing the sale, the broker thus actually closing the trade can not

be said, as a matter of law, to be the one whose efforts were the primary, proximate, and procuring cause of the sale. Under such circumstances it becomes a question of fact as to which broker was the proximate, predominating, and procuring cause of the sale. . . Where a broker for the sale of property notifies the owner that he has a customer, and introduces such customer to the owner, and where the negotiations between such broker and such customer are pending and have not fallen through, the owner can not, with the knowledge of the facts, complete the purchase through another agent and avoid his liability for the commission due the first broker. . . The law will not permit one broker who has been entrusted with the sale of land, and is working with a customer whom he has found, to be deprived of his commission by another agent stepping in and selling the land to the customer so found by the first broker. . . Between the principal and the broker the utmost good faith must be exercised." *Gresham* v. *Lee,* supra. But where, as the jury was authorized to find from the evidence in the present case, Thompson neither produced a customer who actually offered to buy "at the price and on the terms stipulated by the owner" nor had a customer between whom and the owner, through the broker, negotiations were still pending at the time of the sale by the second broker, he was not entitled to any commission whatever. *Doonan* v. *Ives,* 73 *Ga.* 295. Cases cited by counsel for the plaintiff, for example, where an owner sells through another broker while the deal is still pending through the first broker, or where the owner interferes with the efforts of the first broker, or where, when the prospect is willing to buy on the terms named, the owner sells through another broker on different terms, are clearly distinguishable on their facts.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*