231 F.2d 540
 Alexander McKEOWN and Fred G. Held, on behalf of themselves and as representatives of a class identified as all members of the American Federation of Hosiery Workers, Appellants,
v.
Sam WHEAT et al., Individually and as representatives of a class of persons identified as the members of Branch 74, American Federation of Hosiery Workers et al., Appellees.
 No. 15812.
 United States Court of Appeals Fifth Circuit.
 March 27, 1956.
 
 Edwin M. Pearce, Atlanta, Ga., for appellants.
 R. Carter Pittman, Dalton, Ga., for appellees.
 Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.
 BROWN, Circuit Judge.
 
 
 1
 American Federation of Hosiery Workers brought this diversity action against all officers and former members of Branch 74 for declaratory judgment and ancillary relief declaring that all of the assets and records of the Branch, since dissolved because its membership had become less than seven, rightfully belongs, under the Constitution[1] of Federation and Branch, to the Federation. After hearing, the court sustained a plea that a prior State Court suit[2] by certain members against Branch officers was res judicata.
 
 
 2
 The plea of res judicata, as such, cannot be sustained for the Federation was neither a named party, Floyd & Lee v. Boyd, 16 Ga.App. 43, 84 S.E. 494; Smith v. Downing, 21 Ga.App. 741, 95 S.E. 19; Buie v. Buie, 175 Ga. 27, 165 S.E. 15; Georgia Code, Section 3-607, nor was it in privity with the State Court defendants, the officers of the Branch. The Georgia rule, controlling here, is the universal one: "`Privies are all persons who are represented by the parties and claim under them, all who are in privity with the parties; the term privity denoting mutual or successive relationship to the same rights of property'", Roberts v. Hill, 81 Ga.App. 185, 58 S.E.2d 465, 467; Goodwin v. Bowen, 184 Ga. 408, 191 S.E. 691; 50 C.J.S., Judgments, §§ 601, 756.
 
 
 3
 Here the Federation in no sense claims through the former officers of the Branch. On the contrary, its case is founded on the assertion that by Constitution and By-Laws binding on Branch and Federation alike, the paramount ownership is in the Federation. Instead of its claim being derivative from, or subservient to, the State Court defendants,[3] it is prior and superior.
 
 
 4
 It fares no better as a plea of estoppel by judgment. Factually, this hangs on a tender strand. On the May hearing for an interlocutory temporary Receiver and injunction, the Branch officer-defendants, to identify formal documents as the Federation's Constitution and By-Laws, called the Federation's General Counsel (then in nearby Chattanooga, Tennessee) as a witness. Pressed as to the Federation's interest in the litigation and the party responsible for the selection and payment of defendants' counsel, he readily acknowledged that the Federation "* * * had an active and real interest in the funds in dispute * * *; the * * * Federation * * * is the owner of all of the property sought to be recovered by the * * *" State Court plaintiffs. The defendants' attorney, he said, was employed by the local defendants after inquiry by them to the Federation, receipt of the General Counsel's recommendation and a call by him to the local attorney requesting that he accept the employment. Concerning the attorney's fee, he stated that "we haven't decided that yet", "* * * it has not been decided out of whose money — it has not been decided out of whose funds * * * [he] * * * will be paid. * * *, if the [state court] defendants do not prevail in this action, the Branch's funds can't pay him and he'll have to be paid, * * *" but that, "* * * if nobody else pays him, I'll pay him out of my own pocket."
 
 
 5
 On this thin record fortified only by knowledge on the part of the Federation of the pendency of the State Court action, the court below reached the conclusion[4] that this made the State Court proceeding the Federation's lawsuit.
 
 
 6
 Of course no estoppel arises from the order of May 26, 1953, which, interlocutory by nature for preservation of the status pending litigation, was subject to change and modification and hence, in no way a final judgment. Bannon v. Bannon, 270 N.Y. 484, 1 N.E.2d 975, 105 A.L.R. 1401. Indeed, the formal plea ignores this altogether and rests expressly and solely on the final judgment of July 20, 1953. The occurrence of May 26 is therefore relevant only insofar as the fact that the General Counsel's appearance as a witness and his testimony that defense counsel's fee might ultimately be paid by the Federation, affords factual and legal basis for the conclusion that the General Counsel thereby assumed control of the litigation on behalf of the Federation.
 
 
 7
 In assaying this, we may credit fully the implication that the Federation would likely pay the fee and conversely reject the contrary testimony from at least one of the Branch officer-defendants that liability and payment was their local responsibility. We do this because in Georgia the furnishing of counsel, the payment of counsel's fees is not sufficient, May v. Loeb, 57 Ga.App. 788, 196 S.E. 268, 271. For the "outsider" to become bound, Georgia requires[5] that he virtually be substituted as a party openly and avowedly in the management, direction and control of the case.
 
 
 8
 A natural anxiety over the outcome of the State Court suit, supplying formal testimony in support of one of the defenses, the employment of an attorney, the payment of his fee, is all that can be squeezed out of the pulp of this record. It does not add up to the command and direction of the litigation by the outsider[6] required under the Georgia rule.
 
 
 9
 The plea ought not to have been sustained. The judgment is therefore reversed and the case remanded for determination of the merits by further and not inconsistent proceedings.
 
 
 10
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 For purposes of this appeal, the allegations of the complaint must be deemed admitted including, specifically, the following portions of the Constitution and By-Laws of Federation and Branch:
 "Article IX
 "Branches
 "Dues and Membership
 "Section 1. There must at least be seven (7) paid-up applicants before a charter can be issued by the Federation, and no Branch shall retain a charter if it has less than seven (7) paid-up members in good standing.
 "Section 2. All books, records, funds and property in the possession or subject to the control of any Branch shall be and remain the property of the Federation. In the event that the membership of any Branch falls below seven (7) paid-up members or that a Branch dissolves or withdraws, or is expelled from the Federation, the possession of all the books, records, funds and property of such Branch shall be delivered to the General Secretary-Treasurer within twenty (20) days thereafter, and be retained by the Federation as its absolute property."
 
 
 [2]
 The Federal Court complaint set forth that in May 1953 some of the members of Branch 74 by action contrary to the Constitution voted to distribute all property among the members of the Branch. The moving figures then filed the State Court suit as plaintiffs against the Branch officers seeking a Receiver to make the distribution; the plaintiffs claimed that with the imminent dissolution of Branch 74, the assets and property of the Branch, created by dues paid by members over the years, was about to be transferred to persons outside of the state (presumably the Federation) who had no lawful right to it and who had failed properly to register as an unincorporated association under Georgia laws. Upon hearing held May 26, 1953, the prayer for a temporary Receiver and injunction was granted. No appeal was taken from this interlocutory order. Final judgment for the State Court plaintiffs granting a permanent Receiver entered July 20, 1953, was appealed and affirmed, Caylor v. Wheat, 210 Ga. 429, 80 S.E.2d 688. The Federation was not a named party to the State Court suit
 
 
 [3]
 The Branch officers, defendants in the State Court suit, set up Article IX, § 2, § 3, note 1, supra, to show that, far from claiming an interest of their own, they were bound by the Constitution to hold the property in trust for the Federation
 
 
 [4]
 Under the heading "Facts in the Record," the court stated: "* * * Before the case was tried * * * [the] General Counsel for the Federation, came to Georgia and employed * * * [State Court defendants' attorney], an Atlanta attorney, to try the case. The only interpretation that can reasonably be given to * * * [General Counsel's] testimony in this case is to the effect that he, as General Counsel for the Federation, employed * * * [defendants' attorney]. He stated that if the Federation did not pay * * * [defendants' attorney] that he, himself, would see that * * * [he] was paid. * * * These circumstances together with other circumstances in the record, require a Finding by this Court to the effect that the Federation had knowledge of the litigation, of the issues therein, and actually participated therein."
 Under the heading "Conclusions of Law" the court stated: "Though * * [General Counsel] counsel for the Federation, did not appear as counsel he did appear as a witness, and he did employ * * * [state court defendants' attorney] and the inference is unescapable that he actively participated in the trial."
 
 
 [5]
 May v. Loeb, supra, quotes with approval 34 C.J. 1006 that one not a party may become bound, "`if he openly and actively, and in respect to some interest of his own, assumes and manages the defense of the action, * * *. But to bring about this result it is necessary that the person so intervening should do so for the assertion or protection of some interest or right of his own, or to escape some ultimate liability on his own part; that he should defend the action openly and avowedly and with notice to the adverse party; and that he should be practically substituted for defendant in the management and control of the case, as it is not sufficient to bind him that he merely advised or aided in the trial, gave evidence, cross-examined witnesses, or joined in an appeal, or that he employed and paid defendant's attorney or otherwise contributed to the expense.'"
 See also 50 C.J.S., Judgments, § 785.
 
 
 [6]
 A suggestion is now made in appellees' brief that Federation dominance is shown by the presence of the same Georgia counsel for defendants in the State Court suit and plaintiffs in this Federal action apparently on some vague notion of "guilt" by association. This would be a strange twist indeed. Litigants would have to select counsel not for his availability or qualification, but because of the other business (clients) he has or does not have. And clients, apprehensive lest their counsel's appearance in the courthouse would unwittingly take them along, would find themselves forced to forbid that he accept such contaminating retainers which would, of course, bring on the equitable plea that the client pay fees, not for work done, but for work lost