JOHN V. HOGAN, Respondent, v. CHARLES SLADE, Appellant.

St. Louis Court of Appeals, February 3, 1903.

1. **Real Estate Agent: COMMISSIONS.** If owners of real estate chose to close a deal to a customer of a real estate agent, through other agents and at a lower price than was named to their agent, while the latter's authority was unrevoked and he was still working with his customer at the price named to him, they must pay the agent his commission.

2. ———: ———: INSTRUCTION. In the case at bar, an instruction properly declared the law which stated that if the court found the defendant did not authorize the plaintiff to sell the land in question except at specified prices and within certain fixed times, and further found plaintiff did not make a sale at any fixed price within the time limited, but that the time fixed by the defendant had run out before the sale occurred, the verdict should be for the defendant.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Talty,* Judge.

AFFIRMED.

*Arba N. Crane* and *John W. Dryden* for appellant.

(1) Defendant's peremptory instruction asked at the end of plaintiff's case, and renewed at the conclusion of the trial, should have been given. On the whole case

plaintiff was not entitled to recover. (a) The plaintiff's evidence showed that the only employing of him by defendant was to sell at certain specific prices, and within fixed limits of time; and that before the making of the sale at $160,000 by Small and Crouch, all the times within which he had been authorized to act had expired, and he was then without authority to sell. Being so, he could not recover: for, a broker employed to sell in a limited time is not entitled to commissions on a sale made by the owner after the expiration of the limit, even though it be to a purchaser with whom the broker had been already negotiating. Beauchamp v. Higgins, 20 Mo. App. 514; Page et al. v. Griffin, 71 Mo. App. 524; Fultz v. Weimer, 34 Kans. 576; Watson v. Brooks, 11 Oreg. 271; McCarthy v. Cavers, 66 Iowa 342; Antisdel v. Canfield, 119 Mich. 229. (2) And in cases in which the attention of buyers was not drawn to the land by any act or exertion of the brokers, or they came in touch with the owners independently of them, there, although the negotiations were carried on for a time by the brokers, it was held that they were not the procuring cause of the negotiations that resulted in the sales. Van Dyke v. Walker, 49 Mo. App. 381; Burkholder v. Fonner, 34 Neb. 1; Ludlow v. Carman, 2 Hilt. (N. Y.) 107; White v. Twitchings, 26 Hun 503; Collier v. Johnson, 67 S. W. 830. (3) The undisputed evidence showed that in this case the plaintiff did not bring the land to the buyer's attention by any means, or introduce him to the owner, or in any other way cause the negotiations between him and the owner to be begun. The buyer had known both the land and the owner for years, and was already in negotiation with him. Plaintiff came into the negotiations already pending; and that too at the request of the buyer, and in order to assist him. He in no sense procured the buyer, or caused the negotiations between him and the owner.

*Clinton Rowell, J. H. Zumbalen* and *Gilliam & Smith* for respondents.

(1) The controlling question in this case simply is: Was Hogan the procuring cause of this sale? If he was, he is entitled to recover. Brennan v. Roach, 47 Mo. App. 297; Lloyd v. Matthews, 51 N. Y. 132; Lyon v. Mitchell, 36 N. Y. 237; Sibbald v. Iron Co., 83 N. Y. 378. (2) A sale made through a second broker, at a less price, to a purchaser to whom the first broker had named a higher price, makes the principal responsible to the first broker. Reynolds v. Thompkins, 23 W. Va. 229. (3) If the purchaser is found and negotiations begun within the time limited, it is immaterial that they were not consummated until afterwards. Goffe v. Gibson, 18 Mo. App. 1; Mechem on Agency, sec. 966. (4) The principal can not, when the broker's efforts have resulted in negotiations for a sale, step in, and by taking the matter into his own hands and completing the sale, escape liability to the broker. Keys v. Johnson, 68 Pa. St. 42; Butler v. Kennard, 36 N. W. 579; Nicholas v. Jones, 37 N. W. 679; Mechem on Agency, sec. 967.

GOODE, J.—This is an action to recover a commission for selling land which defendant had an interest in, the sale having been made, the petition alleges, by the plaintiff Hogan as Slade's agent.

The land was known as the Holden tract and consisted of thirty-five acres in the western part of the City of St. Louis, bounded on the north by Delmar avenue and on the west by the river Des Peres, and not far from the western portion of Forest Park, where the World's Fair grounds are. The land was owned as tenants in common by four persons, their interests being as follows: Charles Slade, thirty-two sixty-fourths, or one-half, Lawrence Bruce, three sixty-fourths, Theodore P. Gell, eight sixty-fourths and William B. Thompson, twenty-one sixty-fourths. In all the negotiations and

transactions regarding the property with which we are concerned in the present controversy, Slade, Bruce and Bell acted together, while Thompson acted independently.

Moses Greenwood, who is a real estate agent in the city of St. Louis, formerly owned an interest in this land but had sold out, it seems, and thereafter was endeavoring to sell Slade's interest as the latter's agent; and there was considerable correspondence between the two in regard to the matter during the year 1900. About that time Greenwood organized a syndicate which purchased several large tracts of land in that part of the city, to-wit, the McCorkle, Cleary and DeGiverville tracts, and the plan of the syndicate contemplated the purchase of the Holden tract. On December 4, 1900, Greenwood wrote to Slade, whose headquarters were at Brunswick, Missouri, that he had been trying to arrange a sale of Slade's land, but on account of street car buildings and sheds having been located near it, found it impossible to accomplish anything. He further stated that he had no time to devote to the matter as he had been called east on another matter and had, therefore, requested Mr. Hogan, the plaintiff, to look after it; saying he hoped Slade knew Hogan and if he did, would agree the latter was the right person to accomplish something. That was the beginning of Hogan's connection with the land as Slade's agent.

On December 8, Hogan wrote to Slade saying if the latter would fix a reasonable price on his interest and allow time to work up a sale, Hogan would be willing to try to make one. This letter was evidently answered, as a letter of Hogan's written December 10 shows. But the first letter of Slade's which we find in the record was written February 13, 1901, and in it he said he would give Hogan until February 21 to close a deal for the land at the price stated in a former letter, to-wit, $85,000. From that date to October, 1901, various negotiations ensued, the general drift of which was a

continual increase of the price asked by Slade, Bell and Bruce for their combined interests. It should be stated, that the only persons with whom Hogan was negotiating for a sale were those composing the Greenwood syndicate, which fact was known to his principals all the time and no question is now made about his right to a commission on the score that he represented Greenwood instead of the landowners, or was guilty of bad faith, although some of the cross-examinations indicate that such a defense was originally contemplated.

There was much testimony tending to prove Hogan arranged a sale to Greenwood at $90,000, and that the price was then raised to $135,000, which price there was evidence to show was likewise accepted by Greenwood. But sometime between the middle of April and the first of July, the owners refused to take that sum and demanded $175,000. These advances were due to the rapid rise in the value of real estate in the western part of the city because of the proximity of the World's Fair site.

Greenwood was in New York during part of the summer of 1901 attending to affairs connected with his land purchases and, among other things, was endeavoring to get his syndicate to buy the tract in question for the last named price, which was either $172,000 or $175,000. He did get the consent of the syndicate to buy it at that price, returned to St. Louis the latter part of September, and on the thirtieth day of said month, or the first day of October, notified Hogan he was ready to close the deal. Hogan went to see the owners and on his return told Greenwood the offer had been refused. Greenwood insisted it was no offer by him but an acceptance of the offer theretofore made by Slade and his co-owners. Hogan said they would not sell at that price although they had authorized him to name it; said they demanded $215,000, which offer was good only for that day and it was necessary for Greenwood to say what he would do then and there. Greenwood became provoked

at Hogan, asserting the latter had continually put up the price to him and therefore he would go to see the owners himself and deal with them. He did go to see Bell immediately, but the latter stood by the demand for $215,-000.

The real estate agency of Small & Crouch had just closed a deal with Greenwood for the Cleary tract, and at the consummation of it Crouch told Greenwood he had better buy the Holden or Slade tract immediately adjoining and that he (Crouch) thought he could get it as cheaply as anybody and would like to make the sale. Greenwood testified he was feeling pretty well heated up about that time because of the jump in price of the property on him that morning, so he told Crouch that if the latter could get a reasonable price he (Greenwood) would see about it. The result was that Greenwood bought the property that day for $215,000, the trade being conducted by Small & Crouch. This firm had been empowered to sell the land by Bell, and promised a commission of four thousand dollars for doing so, at ten o'clock that morning, to-wit, the very morning Bell notified Hogan the price was $215,000, net, which price Hogan carried to Greenwood to the latter's surprise and irritation. But Hogan's connection with the trade extends nearer still to its consummation; for when Greenwood expostulated with him for raising the price from $175,000 and expressed a determination to deal directly with the owners, the two went together to Bell's office, Hogan not entering; and it was then Bell stated to Greenwood the price was $215,000, and immediately afterwards that Crouch took up the negotiation.

In several letters written by Slade, he notified Hogan the latter's commission, if he made a sale, would be two per cent, and the parties had talked of the rate of commission in their conversations. The evidence is that two and one-half per cent is the usual commission

to an agent for selling real estate when none is stipulated.

The contention of the defendant is that a demurrer should have been sustained to plaintiff's case; first, because the testimony conclusively showed that when the sale was made plaintiff was not in defendant's employ nor authorized to make a sale; second, granting there was evidence to show plaintiff was still in Slade's employ, the undisputed evidence shows he was not the procuring cause of the negotiation which resulted in the sale, but that Small & Crouch were.

We hardly know how to deal with those points further than to refer to the facts above stated with the trite comment that the duty of weighing disputed testimony rests elsewhere.

We have read the lengthy record in this case as well as the elaborate argument of the defendant therein in support of his points, and our conclusion is that not only is there evidence tending to prove Hogan was in Slade's employ when Greenwood bought and that he induced Greenwood to purchase, but that the evidence established those facts so satisfactorily that a judgment for the defendant would have been well-nigh impossible.

As stated, Bell, Bruce and Slade acted together and the contention that Hogan was not in Slade's employ the day the sale was made is sufficiently answered by pointing to the fact that on the morning of said day he conveyed to Bell Greenwood's acceptance of the $175,000 proposition and took back to Greenwood Bell's refusal of that price and offer to sell for $215,000, net. If the owners chose to close a deal to Hogan's customer, Greenwood, through other agents and at a lower price than was named to Hogan, while the latter's agency was unrevoked and he was still working with his customer at the price named to him, they must pay Hogan his commission; otherwise any real estate agent who had borne the burden and heat of the day in working up a sale might have his reward snatched from him at the

eleventh hour by his principal empowering some one else to sell at a smaller price. Such is not the law. Brennan v. Roach, 47 Mo. App. (St. L.) 290; Wright v. Brown, 68 Id. (K. C.) 577; Tyler v. Parr, 52 Mo. 249; Reynolds v. Tompkins, 23 W. Va. 229.

As to Hogan's not being the procuring cause of the sale, the evidence shows he had been working with Greenwood for about ten months, while Small & Crouch worked with him about ten minutes. Greenwood swore that during 1901, Hogan called to see him in regard to the land every day he was in St. Louis, and wrote to him constantly when he was in the east, urging him to buy the property, lauding its advantages, and telling him it was necessary to control it in order to prevent a use of it unfavorable to the adjacent property, which Greenwood and his associates owned. In fact, all that prevented Greenwood from buying directly from Hogan on the day he made the purchase was that he had become irritated at Hogan on account of the constant advance in price which the latter was forced to make by his principals, who probably became aware that Greenwood and his syndicate were bound to have the tract to carry out their schemes. Granting all that is said by the defendant about a limitation of time having always been imposed on Hogan in respect to selling at any named price, and that after the time expired he had no power to sell longer at that price, there is no escaping the force of the fact that on the very day of the sale, after all his previous labors and in continuation of negotiations with the same customer, a higher price was made to Hogan to lay before said customer than was given to the other firm. In fact, one of the firm of Small & Crouch testified Bell told him he would rather their firm would make the sale than anybody else.

It is thus apparent there was ample testimony to show both the authority of Hogan to make the sale to Greenwood and that he actually made it, or procured it.

In so far as there was a conflict in the testimony, or

any room for dispute on the issues of fact, the findings of the trial court are, of course, conclusive.

The declarations of law were favorable to the defendant and such as his counsel requested, none being requested by plaintiff's counsel. The purport of the first one was that if the court found the defendant did not authorize the plaintiff to sell defendant's interest except at specified prices and within certain fixed times, and further found plaintiff did not make a sale at any fixed price within the time limited, but that the time fixed by the defendant had run out before the sale occurred, the verdict should be for the defendant.

Another declaration was that if the court found that defendant in July, 1901, authorized Hogan to sell defendant's interest for $128,000, within fifteen days. from the time the authority was given, but Hogan did not sell within said time; and further, that defendant did not thereafter authorize him to sell for any other sum, then plaintiff's authority ended after said fifteen days; and if, thereafter, his interest was sold by Small & Crouch, the verdict should be for the defendant.

Still another declaration was to the effect that although Slade employed Hogan to sell, yet if the employment was not exclusive, Slade had the right to authorize other agents to negotiate a sale; and notwithstanding Hogan had negotiated with Greenwood prior to October 1, 1901, yet if the court found Small & Crouch induced Greenwood to buy defendant's interest and that they were the efficient and procuring cause of the sale, the plaintiff was not entitled to a commission.

The court also declared there was no evidence of an exclusive authority to plaintiff. Further, that before a verdict could be found for the plaintiff, the court must be satisfied by the evidence he was the efficient and procuring cause of the sale of defendant's interest to Greenwood.

Those declarations of law were fair and reason-

able and fully as favorable to the defendant as they should have been.

A refused declaration was of the following purport: that there was no evidence in the case to show plaintiff was employed or authorized to sell defendant's interest in the land after the latter part of September, when plaintiff notified Bell he was ready to close at the $172,-000 price. Said declaration was rightly refused; because the testimony of Hogan and of Greenwood not only tended to prove, but positively established the fact, that Bell, on that very day, empowered Hogan to accept $215,000, net; and it is not denied that Bell was authorized to speak for Slade.

There is no error in the record, anl as the judgment is well supported by testimony, it is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.