Argued June 4, decided July 28, 1908.

## JENNINGS v. TRUMMER.

[96 Pac. 874.]

APPEAL AND ERROR—DENIAL OF NONSUIT—REVIEW.

1. Denial of a nonsuit at the close of plaintiff's case will not be reviewed, where the defect in plaintiff's case was cured by subsequent testimony which is properly disclosed by the record.

BROKERS—EMPLOYMENT—PURCHASE OF REAL ESTATE.

2. Where a broker, employed to procure a purchaser, advised the owner of a prospective sale and gave the name of the prospective purchaser, and the owner dealt with the purchaser as a result of such information, the broker brought the parties together, though he did not actually introduce the purchaser to the owner.

SAME—COMMISSIONS—LIABILITY OF OWNER.

3. An owner, employing different brokers to procure a purchaser, who deals, with knowledge of the facts, through one of the brokers, with a customer procured by another broker, is liable to the latter for the agreed commissions.

SAME.

4. An owner, employing several brokers to procure a purchaser, is under no obligation to decide between their conflicting claims, and is only required to remain neutral, both as between them and the purchaser; but he cannot step in and complete a sale and escape liability for the commission.

SAME.

5. Between the principal and his broker, the utmost good faith must be exercised.

APPEAL AND ERROR—CONFLICTING EVIDENCE—VERDICT—CONCLUSIVE-NESS.

6. A verdict on conflicting evidence is not reviewable on appeal.

BROKERS—COMMISSIONS.

7. Where several independent brokers are employed to procure a purchaser, the broker who first procures a purchaser is entitled to the commission, though there is no express contract to that effect.

SAME.

8. One of several independent brokers employed to procure a purchaser must produce a customer of his own, and not one then sustaining that relation to another of the brokers; and, where he is first in negotiation with the customer, he will continue to sustain that relation until it is expressly broken off, or the matter of the purchase has ceased to be held under consideration by the purchaser.

SAME.

9. Whether an owner, employing several brokers to procure a purchaser, dealt, with knowledge of the facts, through one broker, with a customer procured by another broker, and thereby became liable to the latter for the commissions, *held*, under the facts, for the jury.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. JUSTICE EAKIN.

This is an action to recover commissions for the sale of. real estate. Plaintiffs allege that in December, 1904, the defendant employed them to find a purchaser for the furniture and good will of a rooming house in Portland, Oregon, for the price of.$7,000 net to the defendant, for which they were to have for their commission such sum above $7,000 as they should be able to obtain; that on December 23, 1904, plaintiffs were negotiating a sale with Mrs. Lange as a prospective purchaser at the price of $7,750, which she was ready, able, and willing to pay therefor, and plaintiffs advised defendant of such prospective sale and gave him the name of the customer, and on December 24, 1904, while plaintiffs were so negotiating with Mrs. Lange, the defendant sold the property to her for a price in excess of $7,000; that.the sale was

procured through the efforts of plaintiffs; and they now ask judgment for $750, the amount of their commissions thereon.

Defendant, by his answer, denies these allegations of the complaint, and alleges that plaintiffs did not procure Mrs. Lange as the purchaser, but that L. R. Cottrell, another real estate broker, introduced her as the purchaser to the defendant at the price of $7,250. The cause was tried by the court without the intervention of a jury, and the court found for the plaintiffs, and rendered judgment thereon, and defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *William Reed* and *Cicero M. Idleman,* with an oral argument by *Mr. Idleman.*

For respondent there was a brief over the names of *Gammans & Malarkey,* with an oral argument by *Mr. Dan J. Malarkey.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. The denial of the defendant's motion for a judgment of non-suit, interposed at the close of plaintiffs' testimony, is the only ground of error presented by the defendant in his brief. It is a general principle that, even if the evidence was insufficient to be submitted to a jury, yet the appellate court will not review the motion if such defect has been cured by subsequent testimony which is properly disclosed by the record. *Bennett* v. *Northern P. Ex. Co.,* 12 Or. 49 (6 Pac. 160); *Carney* v. *Duniway,* 35 Or. 131 (57 Pac. 192: 58 Pac. 105); *Elmendorf* v. *Golden,* 37 Wash. 664 (80 Pac. 264). Therefore we are at liberty to examine the whole of the evidence which is contained in the bill of exceptions in considering the error assigned.

Defendant's contention is that as the property was listed with two agents, and that Cottrell actually brought Mrs. Lange and defendant together and the sale was thus

consummated; that he was justified in dealing with Cottrell, and plaintiffs have no cause of action. On the 23d day of December, 1904, plaintiffs notified the defendant that they had secured Mrs. Lange as a purchaser for said property on the terms and conditions required by the defendant, and the defendant thereupon assented thereto by giving plaintiffs until January 1st to complete the transaction, and signed the following agreement to that effect, viz:

"I hereby agree to give a clear bill of sale to the furniture and good will of the rooming house, No. 323½ Washington St. (known as the Raleigh Block), Portland, Oregon, which includes all the furniture on all of the three upper floors of said building, for the sum of seven thousand dollars ($7,000.00), said sale to be made by the 1st day of January, 1905; and I also agree to loan the purchaser, Mrs. Lange, four thousand dollars, said four thousand dollars to be secured by a first mortgage on said furniture, the principal to be paid off five hundred dollars each quarter, with interest. Said interest is to be at the rate of 8 per cent per annum. It is understood that Jennings & Co. are to get their commission over and above said seven thousand dollars. Done this 23d day of December, 1904.                    L. Trummer."

Although plaintiffs did not actually introduce Mrs. Lange to the defendant, it was not necessary that they do so. They did advise him of the prospective sale and of the name of the purchaser, and, if defendant dealt with her as the result of such information, then plaintiffs brought them together; and the evidence was sufficient to be submitted to a jury on that question. Miss Lange, who is the daughter of Mrs. Lange and was her agent in this transaction, had agreed with the plaintiffs as to the terms of the sale, except that she desired to make a deposit of only $10, instead of $100, as asked by plaintiffs. This fact is evidenced by a blank receipt drawn up in the presence of Miss Lange and read over and assented to by her, except as to the $100 deposit required thereby.

3. Whatever may be the rights of a real estate broker who takes a customer away, from another and closes a sale between such customer and the owner, if done without the aid or connivance of the owner, yet if the owner, with knowledge of the facts, deals with the customer of the first broker, even through another agent, he will be liable to the first broker; and, in view of the evidence in this case, it is a question for the trior of the facts to determine, whether the defendant did not collude with Cottrell to defeat plaintiff in his efforts to complete the sale. The agreement of defendant of December 23d, set out above, was so signed soon after 12 o'clock M. Mr. Cottrell testifies that on the afternoon of that day defendant showed him a copy of this agreement, and they discussed whether or not it gave Jennings the exclusive right to sell to Mrs. Lange; and he says:

"I read it over, and I said: 'I don't see that this is the sold option. It looks to me like he has the privilege to sell it at this price if he can do so before that time.'

Q. And you considered that you had an opening to get in?

A. Mr. Trummer seemed to be of the same opinion.

Q. He thought that did not give him the exclusive option, and he told you you could go ahead?

A. He said: 'You can have it at the same price.' "

This was before Cottrell had seen Mrs. Lange. Trummer testifies that at the same conversation he told Cottrell to go ahead and make the sale.

4. The cases quoted from in defendant's brief upon this question are to the effect that the owner cannot interfere, but the several brokers are free to act independently of each other, and the owner is under no obligation to. decide between their conflicting claims, but only to remain neutral, both as between them and between them and the purchaser. The owner cannot step in and complete the sale, and escape liability for the commission. .

5. The above quotation from the evidence shows, not only that the defendant did not remain neutral, but within a few hours gave to a competing broker the confidence obtained from the plaintiffs and aided him in diverting the customer from plaintiffs. Such conduct is entirely lacking in good faith toward plaintiffs. Between the principal and the broker the utmost good faith must be exercised. The case of *Wood* v. *Wells,* 103 Mich. 320 (61 N. W. 503), is very much in point here. The purchaser was procured by Wood, but the sale was consummated by Calkins, another broker, to Wood's customer on practically the same terms; defendant having been previously informed by plaintiff of his negotiations and with whom he was dealing. It was held that the plaintiff was the procuring cause of the sale and entitled to his commission. To the same effect is *Elmendorf* v. *Golden,* 37 Wash. 664 (80 Pac. 264), where the plaintiff procured the purchaser, of which defendant had full notice. Another broker interfered, and the defendant completed the sale to the second broker for the benefit of plaintiff's customer; and it was held that plaintiff was entitled to his commission. To the same effect is *McCormack* v. *Henderson,* 100 Mo. App. 647 (75 S. W. 171).

6. Defendant urges that plaintiff has not established by a preponderance of the evidence that Mrs. Lange had agreed to buy from the plaintiff at the price of $7,750. Although the evidence is conflicting upon this question, three witnesses testify that she did; and that was a question of fact to be determined from the evidence, which we cannot review.

7. *Tinsley* v. *Scott,* 69 Ill. App. 352, 355, makes the proper distinction in such a case as this: "Of several independent brokers under such employment at the same time, the one who first so sells is entitled to the commission. No express contract to that effect is required to give him that right.

8. "But, to be a producer, the party presented must be a client or a customer of his own, and not one then sustaining that relation to another broker under like employment. If he was first in negotiation with such other, he continues to sustain that relation to him until it is expressly broken off, or the matter of the purchase has ceased to be held by him under consideration. The employer, with notice of the pendency of such negotiation, cannot escape liability to the broker for his commission by selling to his customer through another, even though he first discharges the former, if he does so without giving him a reasonable time to effect the sale." To the same effect is *Day* v. *Porter*, 60 Ill. App. 386, 389. It is said: "Knowing that appellees were, by his procurement, negotiating with and had procured an offer from Mr. Corneau on the 25th, and were still endeavoring to sell to him, he could not, on the 30th, without giving them a reasonable time in which to effect a sale, avail himself of their efforts and deprive them of all compensation, by suddenly terminating their employment. * * The verdict of the jury in this case must be held as establishing that appellant, when the negotiations of appellees with the customer were in progress, terminated their authority for the purpose of avoiding the payment of commissions to them."

9. The evidence in this case tends to establish that in the afternoon of the 23d of December, just after Jennings had secured the agreement from defendant giving him until January 1st to conclude the sale to Mrs. Lange, he gave to Cottrell information of the whole transaction and consented to his interfering at least 18 hours before Mrs. Lange phoned to the plaintiffs that she would not purchase, and on the afternoon of the same day Cottrell concluded an agreement of sale with Mrs. Lange, eight days before the expiration of the time given to plaintiffs in writing in which to close the sale; and it is a question of fact, to be determined from all the evidence, whether

defendant and Cottrell were not the occasion of the sudden termination of her dealings with plaintiffs. There was sufficient evidence upon these questions to raise an issue of fact, and it was not error to deny the motion for judgment of nonsuit.

The judgment is affirmed.          AFFIRMED.