## GRESHAM v. LEE.

1. Where property has been listed for sale with two or more real-estate brokers, and one of them, with the knowledge of the owner, has interested a customer in the purchase, and, while negotiations with the broker are still pending, the owner proceeds to close the sale with the same customer through another broker, the latter being the first to present the customer as ready, able, and willing to buy, and actually offering to buy, at the price and on the terms stipulated by the owner; and where the owner, pending such negotiations, has committed no act of bad faith, the efforts of the broker thus actually closing the trade can not be regarded, as a matter of law, as the procuring cause of the sale, so as to exclude the claim of the other broker against the owner for commissions.

2. In such a case the owner must proceed at his peril, in effecting the sale and paying the commissions to the broker thus closing the sale.

3. Under the facts stated in the questions propounded by the Court of Appeals, it can not be said, as a matter of law, that a finding was demanded in favor of either of the brokers; it being, under said facts, a question of fact as to which broker was the procuring cause of the sale, and therefore entitled to commissions.

4. Under subdivisions (a) and (b) of section 42 of the act establishing.the municipal court of Atlanta, a party who has made no oral motion for a new trial, nor appealed to the appellate division thereof from an order denying an oral motion for new trial, can not urge that a judgment by that court, on a trial without a jury, is contrary to the evidence; and subdivision (b) denies such a right to a petitioner in certiorari.

5. Quere, whether other facts in the record may or may not demand a finding in favor of the plaintiff, is not decided, because this court deals with questions propounded by the Court of Appeals only on such facts as are set out therein.

No. 2604. FEBRUARY 23, 1922.

Questions certified by Court of Appeals (Case No. 12020).

*Neufville & Neufville,* for plaintiff in error.

*Ernest Buchanan,* contra.

HINES, J. 1. The Court of Appeals desires instructions of this court upon the following question:

" Where property has been listed for sale with two or more real-estate brokers, and one of them, with the knowledge of the owner, superior court. February 14, 1921.

has interested a customer in the purchase, and, while the negotiations with the broker are still pending, the owner proceeds to close the sale with the same customer through another broker, the second broker being the first to present the customer as ready, able, and willing to buy, and actually offering to buy. at the price and on the terms stipulated by the owner, and where the owner, pending such negotiations, has committed no act of bad faith, amounting to a failure to remain neutral between the brokers, or to an interference in favor of the broker actually closing the sale, must the efforts of the broker thus actually closing the trade be regarded, as a matter of law, as the procuring cause of the sale, so as to exclude the claim against the owner for commissions by the other broker, whose prior negotiations were then still pending? "

Where the services of a broker, as well as those of another broker, have conjointly contributed to the successful termination of negotiations resulting in the sale of real estate for an owner, the question which of the brokers is entitled to commissions from the owner for effecting such sale depends upon whose efforts were the primary, proximate, and procuring cause of the sale negotiated. The broker whose services and efforts were the primary, proximate, and procuring cause of the sale would be entitled to the commissions. Beougher *v.* Clark, 81 Kans. 250 (106 Pac. 39, 27 L. R. A. (N. S.) 198); Votaw *v.* McKeever, 76 Kans. 870 (92 Pac. 1120).

Where one broker, with the knowledge of the owner, has interested a customer in the purchase, and, while negotiations with the broker are still pending, the owner proceeds to close the sale with the same customer through another broker, who first presents the customer as ready, able, and willing to buy, and actually offering to buy, at the price and on the terms stipulated by the owner; and where the owner, pending such negotiations, has committed no act of bad faith amounting to a failure to remain neutral between the brokers, or to an interference in favor of the broker actually closing the sale, the broker thus actually closing the trade can not be said, as a matter of law, to be the one whose efforts were the primary, proximate, and procuring cause of the sale. Under such circumstances it becomes a question of fact as to which broker was the proximate, predominating, and procuring

cause of the sale. Murray *v.* Currie, 7 Car. & P. 584, 2 Eng. R. C. 527.

Where a broker for the sale of property notifies the owner that he has a customer, and introduces such customer to the owner, and where the negotiations between such broker and such customer are pending and have not fallen through, the owner can not, with the knowledge of the facts, complete the purchase through another agent and avoid his liability for the commission due the first broker. Beougher *v.* Clark, 81 Kans. 250 (supra) ; Jennings *v.* Trummer, 52 Ore. 149 (96 Pac. 874, 23 L. R. A. (N. S.) 164, 132 Am. St. R. 680) ; Day *v.* Porter, 161 Ill. 235; Rigdon *v.* More, 226 Ill. 382 (80 N. E. 901).

The law will not permit one broker who has been entrusted with the sale of land, and is working with a customer whom he has found, to be deprived of his commission by another agent stepping in and selling the land to the customer so found by the first broker. Williams *v.* Bishop, 11 Colo. App. 378 (53 Pac. 239) ; Clifford *v.* Meyer, 6 Ind. App. 633 (34 N. E. 23) ; Hogan *v.* Slade, 98 Mo. App. 44 (71 S. W. 1104) ; McCormack *v.* Henderson, 100 Mo. App. 647 (75 S. W. 171) ; Holland *v.* Vinson, 124 Mo. App. 417 (101 S. W. 1131) ; Gilmour *v.* Freshaur, 126 Mo. App. 299 (102 S. W. 1107) ; Wood *v.* Wells, 103 Mich. 320 (61 N. W. 503) ; Elmendorf *v.* Golden, 37 Wash. 664 (80 Pac. 264).

Between the principal and the broker the utmost good faith must be exercised. Jennings *v.* Trummer, 52 Ore. 149 (supra).

Under the facts recited in the above question it can not be said, as a matter of law, that the second broker was the procuring cause of the sale; and we answer this question in the negative.

2. The Court of Appeals propounds this question: " Is it the rule, in such a case, that the owner could only proceed at his peril to effect the sale and pay the commission to the broker thus closing the sale, for the reason that, under such circumstances, it is not a question of law, but one of fact, to be determined under the particular circumstances of the case, as to whose efforts were the primary, proximate, and procuring cause of the sale? " Under the above authorities and the principles therein ruled we answer the above question in the affirmative.

3. The Court of Appeals propounds this question: " In such a case, does the mere fact that a broker was the first to interest

the purchaser in the property, to the extent that he began negotiations for a purchase, which continued until a sale was effected to the same customer through another broker, render the owner liable, as a matter of law, for commissions to the first broker, as the one whose efforts must be taken to be the procuring cause of the sale, although the owner commits no act of bad faith toward the first broker, but merely knows that he found the prospect and was the first to begin negotiations?" Under the facts stated in the first question and in this question, would the owner, as a matter of law, be liable to the agent for his commissions? According to the case as stated, one broker, with the knowledge of the owner, interested a customer in the purchase. While the negotiations between the purchaser and this broker were still pending, the owner proceeded to close the sale with the purchaser through another broker. The relation between the owner and the first broker had not been terminated, but continued until a sale was effected to the customer through the second broker. The second broker first presented the customer as ready, able, and willing to buy, and actually offering to buy, at the price and on the terms stipulated by the owner, and the owner had committed no act of bad faith in the transaction. Under these circumstances, would the owner be liable as a matter of law to pay the first broker his commissions?

The general rule is, that, where the owner of property employs a broker to sell the same, in order to earn his commissions the broker must procure a purchaser who is able, ready, and willing to buy, and who actually offers to buy, on the terms stipulated by the owner. *Phinizy* v. *Bush,* 129 *Ga.* 479 (59 S. E. 259); Civil Code, § 3587. Where a broker employed to negotiate a sale of a parcel of land procures a purchaser ready, able, and willing to purchase upon terms satisfactory to the principal, the principal can not defeat the broker's right to commission by taking the proceeding out of the hands of the broker and completing the sale himself. *Gresham* v. *Connally,* 114 *Ga.* 906 (41 S. E. 42). The same result would follow if the owner dealt with the customer through another broker. Jennings *v.* Trummer, 52 Ore. 149 (supra). Which of two brokers, both of whom are employed to sell a piece of real estate, and who expended effort in attempting to sell the same, is the procuring cause of the sale, is usually a

question of fact for the jury. Rosenfield *v.* Wall, 94 Conn. 418 (109 Atl. 409, 9 A. L. R. 1189) ; Jennings *v.* Trummer, supra; Murray *v.* Currie, 7 Car. & P. 584, 2 Eng. R. C. 527; *Doonan* v. *Ives, 73 Ga. 295.*

We understand, from the questions propounded by the Court of Appeals, that that court inquires, and wishes instructions, whether, under the facts stated in such questions, either of these two brokers, as a matter of law, is entitled to commissions for the sale of this property; and not whether a finding in favor of either broker would be contrary to the evidence or to the law. So understanding the purport of these questions, we answer the third question in the negative. There appear in the record other facts which may or may not make a case for the plaintiff, and which may or may not demand, as a matter of law, a finding in his favor. It appears that the plaintiff took the prospective customer to the premises on Saturday, before any sale was effected; and on that day the defendant took the first broker and this customer over the premises. This inspection of the premises and this interview between the purchaser and the owner, in the presence of the first broker, resulted in an understanding, according to the contention of the plaintiff, by which the wife of the purchaser was to see this property on the following Sunday afternoon. The customer was to see the plaintiff about the purchase of this property on the next Monday. On Saturday night the first broker called up the owner and informed her that the purchaser made an offer for this property, less than her price, which she declined. The purchaser said he would give the owner's price, if his wife was pleased with the property; but it does not appear that this fact was communicated to the owner. On the following Sunday afternoon, after the above inspection of this property by the purchaser, the latter went out to see the same. At that time the second broker was at the premises, showing the same to other customers. It appears that the second broker told the owner that she need not be uneasy about selling this property, and that if she did not sell it he would buy it. On this occasion the customer asked the owner if she had sold the house, and she replied that she had not, but to the first one who came to her with a check the next day she would sell the same. On the next day the second broker went to the house of the owner and informed her he had sold the premises. The owner states that she did not

know who the purchaser was, or why he switched from the first broker to the second broker, and on this subject the record is silent; but the owner did transfer to the customer of the first broker her bond for title under which she held the premises.

It has been held that where the owner of real estate closes a deal with a customer of a real-estate agent, through other agents, and at a lower price than was named to the first agent, while the latter's authority is unrevoked, and he is still working with the customer at the price named to him, he must pay the agent his commission. Hogan *v.* Slade, 98 Mo. App. 44 (supra); Holland *v.* Vinson, 124 Mo. App. 417 (supra); Clifford *v.* Meyer, 6 Ind. App. 633 (supra); *Grove Realty Co.* v. *Adair, 26 Ga. App.* 220 (105 S. E. 735).

But as these additional facts are not embraced in the questions propounded, this court does not undertake to say what weight should be given them, or whether they, with the facts stated in the questions propounded, demand a verdict for the plaintiff.

4. The Court of Appeals propounds this question: " (*a*) If an affirmative answer is given to the second question, has a petitioner for certiorari in a case in the municipal court of Atlanta, who has made no motion for new trial in the municipal court nor appealed to the appellate division thereof, the right to urge that a finding and judgment rendered by that court, on a trial without a jury, is contrary to the weight of the evidence? (*b*) Does the act establishing the municipal court of Atlanta (Ga. L. 1913, p. 145), and especially subdivisions (a) and (b) of section 42 thereof, deny such a right to a petitioner in certiorari in such a case? "

A petitioner for certiorari in a case in the municipal court of Atlanta, who has made no motion for a new trial therein, nor appealed to the appellate division thereof, has no right to urge that a finding and judgment in that court, on a trial without a jury, is contrary to the weight of evidence. Section 42, paragraph (a), of the act creating the municipal court of Atlanta (Ga. L. 1913, pp. 145, 167) provides: " Upon the rendition of a verdict of a jury in said court, or upon the announcement of judgment by the court in a case tried without a jury, any party to said cause, or his counsel, may make an oral motion for a new trial in the said court,; and unless an oral motion for a new trial shall be made upon the rendition of judgment or the finding of a verdict,

the parties shall be held to have waived their right to move for a new trial, except upon the grounds upon which extraordinary motions for new trial may be made. . . Should the court grant said motion upon any ground, there shall be no appeal from such judgment granting a new trial, and the case shall stand for new trial, *de novo.*" This paragraph means that when a party fails to make the oral motion for new trial therein provided for, he shall be held to have waived his right to move for a new trial in said court. But a failure to make said motion, or, if overruled, to appeal therefrom, as is provided in paragraph (b) of said section, does not strip such party of his right to apply for the writ of certiorari. *Johnston* v. *Brenau College-Conservatory,* 146 *Ga.* 182 (91 S. E. 85).

In a case in the municipal court of Atlanta, where no jury is demanded and the trial judge passes upon the issues of law and fact involved and renders judgment, that judgment or the judgment of the trial judge overruling an oral motion for a new trial may be reviewed by certiorari, without first taking an appeal to the appellate division of that court from the judgment on the oral motion for a new trial. *Taylor* v. *Mutual Benefit Asso.,* 146 *Ga.* 660 (92 S. E. 47).

Subdivision (b) of said section provides, that, should the trial judge deny such oral motion for a new trial, an appeal will lie to the appellate division of said court, except upon two grounds: (1) that the verdict found or judgment rendered is contrary to the evidence and the principles of equity; and (2) that said verdict or judgment is decidedly and strongly against the weight of the evidence; which excepted grounds for new trial shall not be otherwise urged than in such oral motion, "and as to which excepted grounds the order denying" the oral "motion for new trial shall be conclusive, and such ground shall not be urged upon appeal from such order, nor by writ of error." This court has held that "subdivision (b) of section 42 [of this act] denies to a petitioner in certiorari, or a plaintiff in error, seeking a review in the Court of Appeals, the right to urge the question of the sufficiency of the evidence as a ground for reversal." *Johnston* v. *Brenau College-Conservatory,* supra.

That was a decision by a full bench of this court, and is controlling. On the strength of that decision we answer paragraph

(a) of question 4 in the negative, and paragraph (b) of said question in the affirmative.          *All the Justices concur.*