## 19068. UPCHURCH *v.* MAYNARD *et al.*

DECIDED FEBRUARY 21, 1929. REHEARING DENIED MARCH 2, 1929.

*Lamar C. Rucker,* for plaintiff.

*Richard B. Russell Jr., J. C. Pratt,* for defendants.

BELL, J. This was a suit on a quantum meruit by C. L. Upchurch against T. A. Maynard and G. W. DeLaPerriere, to recover the reasonable value of the plaintiff's services in procuring for them a sale to one Finney of certain corporate stock. There was no demurrer to the petition, and the case proceeded to trial. At the conclusion of the plaintiff's evidence the court, on motion, granted a nonsuit, and the plaintiff excepted.

By way of inducement the plaintiff pleaded and introduced in evidence a writing in the form of a letter, by which the physical properties of Barrow County Cotton Mills, located at Winder, Georgia, and Lawrenceville Yarn Mills, at Lawrenceville, which were owned by a corporation, were listed with the plaintiff for sale at $260,000, on a commission basis of 5 per cent.; which letter was signed by the defendant DeLaPerriere, but without anything to indicate whether he was acting personally for himself, or in behalf of the company, of which the other evidence showed that he was vice-president.

The plaintiff was a broker engaged in selling such properties on commission. After receipt of this letter he did certain advertising which attracted the attention of Finney, who was located in Huntsville, Alabama, and was interested in buying a cotton mill or cotton mills in the south. Finney came to the office of the plaintiff in Athens, Georgia, and from that point the plaintiff had a telephone conversation with the defendant T. A. Maynard, at Winder, the plaintiff telling Maynard that he had a customer and would bring him over. As a result of this conversation the plaintiff and Finney went immediately to Winder, examined the property at that place, and held a conference with the defendants. Finney declared that the price was too high and that he would decline the offer.

Each of the defendants was an owner of stock in the company, and Maynard raised the question of whether Finney would be interested in purchasing stock instead of physical properties. Finney replied in the affirmative, and, after some discussion relating to a sale of stock, the plaintiff interposed the inquiry, "If you are going to trade on that basis, where do I come in?" Finney suggested that it was "an inopportune time to bring that up." The plaintiff said, "I do not think so"; whereupon Finney said, "That is entirely with these gentlemen." Maynard remarked, "We will take care of you later," and DeLaPerriere said, "We will do that by buying the outstanding stock for less than fifty cents on the dollar." In the conversation it was proposed that Finney should buy one third of the entire capital stock of the company, the defendants making certain warranties as to the financial condition of the mill. No definite conclusion was reached, and it was agreed that pending further consideration of the matter the defendants would investigate the character and responsibility of Finney and that he would do likewise as to them. The conference at Winder was concluded with a request from Maynard that the plaintiff take Finney to Lawrenceville and show him the plant there. The plaintiff "did take him there," and they "inspected the Lawrenceville plant in detail." After this the plaintiff carried Finney to Atlanta in the plaintiff's car and "stayed with him until the next morning at the hotel, and discussed the sale for an hour or two." The plaintiff then returned to Winder and told Maynard "that it looked like Mr. Finney was a buyer; that he liked the property in Lawrenceville." Mr. Maynard said, "Upchurch, I hope that goes through. We are financially in bad shape; if we do not get new money or some one to come in here to act as president and put new money in this plant, we are going broke."

Soon after the parties had concluded their original conference at Winder, the defendant DeLaPerriere stated to the superintendent of the mill in that city, "It looks like that fellow Upchurch is going to sell our stock." The plaintiff later talked with Finney over the telephone about the matter, and also wrote to him. Within a short time the defendants made a contract to sell Finney one third of the stock of the corporation, agreeing further that in case he wished to do so he might associate one Russell B. Lowe, of Fitchburg, Massachusetts, in which event they would sell and con-

vey one half of the stock "instead of one third, on same terms, . . the total stock to be held by four, including Mr. Lowe, one fourth each." The defendants owned no stock jointly but with the stock which they held separately, or with this and other stock which they procured, they finally sold to Finney and Lowe one half of the entire capital stock of the company, making the warranty as first proposed as to the financial condition of the company. As a result of such warranty they have become personally liable to Finney for approximately $59,000, and this is one of the reasons why it is claimed the plaintiff should not recover.

At the conference at Winder there were present the plaintiff broker and Finney, the customer, with both the defendants. It was inferable that the defendant DeLaPerriere was present when Maynard instructed the plaintiff to take Finney and show him the plant at Lawrenceville. The defendants appear to have been acting in concert, and did finally make with Finney a joint contract, although, as above stated, they may have owned no stock jointly.

The amount of stock sold was 1300 shares, divided equally between Finney and Lowe, for which they paid $50 per share, or $65,-000. The sale as at last executed was upon the same terms as those discussed at the first meeting, except "changing the contract from one third to one half" of the stocks. The plaintiff later requested the defendants to pay him for his services which request was refused. The suit was to recover a commission of 5 per cent. of the above amount, the plaintiff testifying that this was the reasonable value of his services. So far as appears the defendants bought no stock for "less than 50 cents on the dollar." There was very little conflict in the testimony, and from the evidence the facts could have been found as above stated.

We think the court erred in granting the nonsuit. We may lay aside all question as to whether the letter written by DeLaPerriere to the plaintiff was his personal act or the act of the corporation through him as its agent or officer. Neither is it controlling that the listing thus made was of the physical properties, and not of the capital stock which was later sold. These matters were brought in merely for the purpose of explaining how the defendants and the plaintiff came together, and to illustrate their subsequent conduct.

The suit is not based upon an express contract, and the principal

question for determination is whether the plaintiff rendered for the defendants ·valuable services which they accepted. "Ordinarily, when one renders services valuable to another, which the latter accepts, a promise to pay the reasonable value thereof is implied; and in such case it is not necessary to prove an express promise to pay for such services." *Washington* v. *Jordan,* 28 *Ga. App.* 18 (2) (109 S. E. 923); Civil Code (1910), § 5513. The evidence authorized the inference that the defendants encouraged the plaintiff to assist them in selling the corporate stock, and that he went about doing so under the reasonable assumption that he would be paid for his services. Whether the things which he then did were the procuring cause of the sale was, under the evidence, a jury question. *Gresham* v. *Lee,* 152 *Ga.* 829 (111 S. E. 404); *Gresham* v. *Connally,* 114 *Ga.* 906 (41· S. E. 42); *Doonan* v. *Ives,* 73 *Ga.* 295; *Graves* v. *Hunnicutt,* 8 *Ga.· App.* 99 (68 S. E. 558); *Grove Realty Co.* v. *Adair,* 26 *Ga. App.* 220 (105 S. E. 735).

The plaintiff's demand for compensation was not necessarily defeated by the fact that the sale was finally closed by the defendants. It is enough for a recovery if the plaintiff's services were the efficient cause. *Collier* v. *Holland,* 24 *Ga. App.* 251 (100 S. E. 654); *Wilcox* v. *Wilcox,* 31 *Ga. App.* 486 (2) (119 S. E. 445), and cit.

Nor is it true that the plaintiff was concluded by the fact that the defendants bound themselves by a guaranty to the purchaser which may have made the sale unprofitable, although this might perhaps be a circumstance which could be considered by the jury in determining the value of the plaintiff's services. *Kraft* v. *Rowland,* 33 *Ga. App.* 806 (4) (128 S. E. 812). Even if the sale had been on terms less favorable to the defendants than those originally proposed, the plaintiff might still recover, if the other essentials of a cause of action were present. *Graves* v. *Hunnicutt,* 8 *Ga. App.* 99 (68 S. E. 558); *Grove Realty Co.* v. *Adair,* supra.

It is immaterial that no stock was owned jointly or in common by the parties, provided they acted jointly in their dealings with the plaintiff. They finally made a *joint contract* to sell the stock of each, and they were acting in concert in their negotiations both with the plaintiff and with his customer. In these circumstances they can not escape liability merely because the subject-matter of the sale may have been, in parts, owned separately by them. Compare *Mathis* v. *Shaw,* 38 *Ga. App.* 783 (145 S. E. 465); and see

*Willingham* v. *Glover,* 28 *Ga. App.* 394 (2, 3) (111 S. E. 206). It is clear that in the dealings with the plaintiff upon which he relies for a recovery, the defendants were not acting for the company, but for themselves, to the end of selling their private properties.

The plaintiff testified that when the parties turned from the negotiations as to the sale of the physical properties to the question of a sale of the corporate stock, and on his expressing a desire at that time to know "where he came in," Maynard said to him, "We will take care of you later." In making this statement Maynard was assuming to speak both for himself and the other defendant, who was present apparently assenting. Since from this statement and the other facts in evidence it might have been inferred that the defendants manifested a desire for the plaintiff's services, intending to pay their reasonable value, and that he accordingly rendered services of value which they accepted, it is unimportant, under the form of the action brought, that such statement was indefinite as not specifying what the plaintiff was to do and what, if anything, he was to be paid. The plaintiff is not suing upon an express contract, and it is not necessary that he should show facts constituting such an agreement. *Myers* v. *Aarons,* 30 *Ga. App.* 750 (119 S. E. 223).

Under the law and the facts there may have been a recovery notwithstanding the plaintiff's testimony to the effect that the defendant DeLaPerriere said to him, "We will do that [take care of you] by buying the outstanding stock for less than fifty cents on the dollar," since it could be inferred that the plaintiff's right was not dependent upon such a consummation. The defendants might have hoped to buy other stock at a price which would make the payment of a commission less burdensome upon them, but neither their doing so nor their ability to do so was expressly stipulated as a condition precedent to their liability, and, under the evidence, this could have been taken as a matter which they proposed to work out for themselves upon their own responsibility, without in any way affecting the plaintiff in his right to compensation. *Martin* v. *Thrower,* 28 *Ga. App.* 270 (110 S. E. 742). Such statement is some evidence of a desire to have the plaintiff to render services and of an intention to pay therefor.

The question as to the value of the plaintiff's services was one

of fact for determination by the jury, under the evidence. *Marshall v. Bahnsen,* 1 *Ga. App.* 485 (57 S. E. 1006); *Daniell v. McRee,* 31 *Ga. App.* 210 (120 S. E. 448).

It is unnecessary to decide whether the increase in the amount of stock to be sold by the association of Lowe could be considered as a fact in the plaintiff's favor, the increase having been brought about by Finney, and not having been contemplated in the original negotiations. If the plaintiff's services were the procuring cause of the sale of any portion of the stock, a prima facie case being otherwise made out, he would be entitled to recover the reasonable value of his services as related to the sale of that portion. *Holdridge v. Cubbedge,* 71 *Ga.* 254. It is error to grant a nonsuit if a verdict would be authorized for any part of the plaintiff's demand, where the facts proved are consistent with the case as laid in the petition. *Collier v. Pritchett,* 31 *Ga. App.* 451 (4) (118 S. E. 444).

After a thorough examination of all the evidence, we are constrained to hold that the case should have been submitted to the jury, and, thus, that the court erred in granting the nonsuit.

The plaintiff having predicated his right to recover solely upon the theory that his services were the procuring cause of the sale, and this court being of the opinion that the evidence would have authorized a verdict upon that theory, no decision is required as to whether under the circumstances the sale was a condition precedent to the implied obligation of the defendant to pay for such services, or as to whether, even if the sale was such a condition precedent, it was necessary to a recovery in some amount that the services should appear to have caused or contributed to the sale, if they were rendered at the defendants' request and were of some value.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*