## A01A2144. BAYLIS v. ATLANTA INTEGRITY MORTGAGE, INC.
(558 SE2d 429)

ANDREWS, Presiding Judge.

Atlanta Integrity Mortgage, Inc. (AIM) sued Willa Andrella Baylis to collect a mortgage broker fee it claimed due for procuring a mortgage for Baylis's residence. Baylis appeals from the judgment entered on a jury verdict finding she owed the fee and awarding AIM $16,912.50 in brokerage fees, plus interest and attorney fees. Because there was evidence to support the verdict finding that AIM earned the fee by procuring the mortgage and was entitled to attorney fees under its contract, we affirm the judgment.

1. Baylis claims the trial court should have granted her motion for a directed verdict or a judgment notwithstanding the verdict because the evidence showed as a matter of law that AIM did not procure the mortgage.

Baylis entered into a nonexclusive contract with AIM which provided that AIM would make efforts to find a mortgage for her residence and was entitled to a brokerage fee equal to 1.25 percent of any mortgage obtained for her by AIM. Joseph Wood, Jr., a mortgage broker operating as AIM, testified that Baylis hired him after she had encountered difficulty finding a mortgage in excess of $1,000,000 for construction of a large residence with an unusual configuration — a 6,900-square-foot home containing only one 2,000-square-foot bedroom. In the process of looking for a mortgage lender, Wood contacted Keith Hall at Hallmark Financial Services. Hall told Wood that, because of the size of the mortgage, he was unable to act as a lender but that he could act as a broker and attempt to find a mortgage. At a meeting on January 12, 1998, Wood introduced Baylis to Hall. According to Wood, Baylis agreed that Hallmark would become involved as another mortgage broker working with AIM to obtain a mortgage, that AIM's fee would continue to be 1.25 percent of the mortgage, and that Hallmark would receive a fee of 1.5 percent of the mortgage.

Hall contacted Countryside Home Loans, which eventually provided the mortgage for Baylis's residence. Wood did work on Baylis's mortgage application and financial and disclosure statements and found an appraiser and worked with the appraiser to find comparable residences in the area to support an appraisal of Baylis's unusually configured residence sufficient to obtain the mortgage from Countryside. Evidence showed that Countryside not only used the appraisal obtained by Wood, but also used that appraisal as the basis for a second appraisal required to support the mortgage. Wood produced phone records showing his continuing work with Hall and an agent of Baylis to obtain the mortgage up to and through the mortgage closing, which he attended along with Baylis and Hall on January 5, 1999.

Baylis, on the other hand, testified that she no longer considered AIM to be her mortgage broker after Hall became involved and that she never agreed to pay two mortgage brokers. She testified that she paid Hallmark a 1.5 percent brokerage fee because Hall found the mortgage for her. Hall testified that, although he communicated on a regular basis with Wood about obtaining the mortgage, he received no assistance from Wood to obtain the mortgage. He stated that he initially thought Hallmark and AIM were going to agree to receive a single brokerage fee acting as co-brokers, but that no such agreement was ever reached.

On the above facts, the issue was not whether Baylis agreed to pay two separate brokerage fees, as claimed by Wood. Under the terms of its nonexclusive agreement with Baylis, AIM was entitled to collect a fee only if it actually obtained the mortgage or was the procuring cause of the mortgage. Because Baylis did not grant an exclusive contract to AIM to find her a mortgage, she was free to contract with Hallmark to obtain the mortgage. *Kraft Land Svcs. v. Hart Co.*, 165 Ga. App. 358, 362 (300 SE2d 186) (1983). However, AIM was entitled to show that, even though it did not have an exclusive contract and even though another broker initially found the mortgage lender and worked on obtaining the mortgage, it was the procuring cause of the mortgage. Id. Accordingly, the issue is whether there was evidence to support the jury's conclusion that AIM earned its fee by procuring the mortgage. We will affirm the jury's verdict if there is any evidence to support it. *Centre Pointe Investments v. Frank M. Darby Co.*, 249 Ga. App. 782, 785 (549 SE2d 435) (2001).

There was evidence that AIM, through the efforts of Wood, located and associated Hall in an effort to obtain a mortgage, provided documentation necessary for the mortgage, obtained an appraisal used to support the mortgage, and continued to work on the mortgage with Hall until the closing.

> Where the services of a broker, as well as those of another broker, have conjointly contributed to the successful termination of negotiations resulting in the [acquisition of a mortgage] for an owner, the question which of the brokers is entitled to commissions from the owner for [procuring such mortgage] depends upon whose efforts were the primary, proximate, and procuring cause of the [mortgage]. The broker whose services and efforts were the primary, proximate, and procuring cause of [the mortgage] would be entitled to the commissions.

*Gresham v. Lee*, 152 Ga. 829, 830 (111 SE 404) (1922). AIM produced evidence showing that with the knowledge of Baylis or her agent it continued as part of negotiations to obtain the mortgage through the

time of the closing on the mortgage. See *Kraft Land Svcs.*, 165 Ga. App. at 363. Whether under the circumstances these efforts were the procuring cause of the mortgage was a jury question. *May v. Sibley*, 85 Ga. App. 544 (69 SE2d 693) (1952); *Newman v. James M. Vardaman & Co.*, 162 Ga. App. 878, 882 (293 SE2d 462) (1982).

Even if Baylis contracted to pay a commission only to the broker who was the procuring cause of the mortgage, she proceeded at her own peril to pay Hallmark instead of AIM without a determination as to which broker's efforts were the procuring cause. *Gresham*, 152 Ga. at 831. Although a jury could have concluded on the above facts that AIM was not the procuring cause and was not entitled to receive a brokerage fee, there was evidence to support the jury's verdict to the contrary. The trial court did not err by denying Baylis's motions for a directed verdict and for j.n.o.v.

2. Contrary to Baylis's contention, there was evidence to support the jury's award of attorney fees and expenses in the amount of $19,567.42.

We agree that there was no basis for the award of attorney fees or expenses pursuant to OCGA § 13-6-11 because there was no evidence that Baylis acted in bad faith, and there was a bona fide controversy between the parties. However, AIM was entitled to recover its attorney fees and costs, as shown by the evidence, pursuant to a clause in its contract with Baylis providing for payment of those expenses incurred by AIM in the collection of its fee. *Sylar v. Hodges*, 250 Ga. App. 42 (550 SE2d 438) (2001).

*Judgment affirmed. Eldridge and Miller, JJ., concur.*

DECIDED DECEMBER 19, 2001.

*Pat D. Dixon, Jr.*, for appellant.
*Herald J. Alexander*, for appellee.